Goetz v. Ambs.

————◄◌◌►————

## GOETZ, Respondent, v. AMBS, Appellant.

1. It is generally sufficient in pleading to state facts according to their legal effect; an averment, in a petition in trespass, that the defendant beat and struck plaintiff, will be sustained by evidence showing that he was present aiding and encouraging others in so beating and striking him.

2. To warrant a jury in giving exemplary damages, in an action of trespass, it is not necessary to show that the defendant was prompted by ill will and hostility toward the plaintiff.

3. If an injury to the person be committed unintentionally and result simply from a want of care, the damages awarded should be compensatory; if it be wilful and intentional, exemplary damages may be allowed.

4. Where in an action of trespass the defendant seeks to show that the plaintiff has no interest in the suit, that he has assigned the cause of action or any interest in the judgment that he expected to obtain, he must set up this matter in his answer.

5. Verdicts of juries should not be set aside on the ground that the damages allowed are excessive, unless they are so extravagant as to bear evident marks of prejudice, passion or corruption.

*Appeal from St. Louis Court of Common Pleas.*

This was an action for an assault and battery. On the first trial of the cause the jury gave a verdict in favor of the plaintiff and assessed the damages at the sum of two thousand dollars. The supreme court granted a new trial on the ground of the excessiveness of the damages. (See Report of case, 22 Mo. 170.) On the new trial the evidence showed a permanent loss of one eye. The jury found a verdict for the plaintiff and assessed the damages at the sum of three thousand dollars.

The court, at the instance of the plaintiff, gave the following instructions: " 1. If the jury find for the plaintiff, they should allow such damages as will compensate him for the expenses he incurred in endeavoring to cure himself of the injury by the defendant and for his loss of time, and for any damage he may have suffered, permanent or otherwise, to him in pursuing his trade in consequence of such injury ; and in addition thereto may allow such further sum, for exemplary damages or smart money, as they may, under all the circumstances and facts in evidence, deem right. 2. If the jury shall believe from the evidence that the plaintiff was struck in his left eye by the defendant with the butt end of a whip which he held in his hand, they will find for the plaintiff and assess such damages as from the evidence he has sustained ; and in addition thereto may allow such further sum, for exemplary damages or smart money, as they may, under all the circumstances and facts in evidence, deem right. 3. If the jury believe from the evidence that the defendant did commit the assault and battery complained of, then the defendant can not, under the pleadings, set up any matter in justification of the same."

The court, of their own motion, gave the following: "If the jury find for the plaintiff, it is for them to determine whether they will allow exemplary damages, and if so, how much. In determining the question of exemplary damages, they should consider all the facts and circumstances connected with the inflicting of the injury, and the motives and conduct of the defendant at the time, if the injury was inflicted by him. 5. If the jury believe from the evidence that the blow in question was not struck by the defendant, and that he did not participate in the quarrel except for the purpose of preserving the peace or preventing a disturbance, and did not instigate or countenance the giving of the blow in question, then they should find for the defendant. 6. If there was a quarrel or general fight at the Camp Spring garden at or about the time the plaintiff was injured, and the plaintiff did not participate therein, then that fact should not be considered as mitigating the damages if the defendant intentionally struck the plaintiff in the manner charged. 7. If the jury believe from the evidence that any witness has wilfully testified falsely to any material fact, they should reject all parts of his testimony which are false, and are at liberty to reject his testimony altogether. It is the exclusive province of the jury to determine what weight should be given to the testimony of each witness."

The defendant asked the following instructions, which were refused: "1. If the jury should find that any other person than Ambs struck the plaintiff, by means of which striking plaintiff was injured as complained of, then they should find for the defendant, even if they should be of opinion that defendant was present countenancing such striking. 2. The jury must find for the defendant, unless they are satisfied that the defendant committed the injury complained of in person. 3. Unless the jury believe from the evidence that defendant deliberately and maliciously struck the plaintiff with the intent to injure him, then they ought not to give exemplary damages against him. 4. In allowing smart money to plaintiff, in case the jury should find for plaintiff,

the jury should consider mainly the malicious intent and motive of defendant in committing the injury complained of."

The court, at the instance of the defendant, gave the following instruction: "If the jury believe that any one witness in this case has corruptly sworn falsely to any statement in his testimony, then the jury are bound to disregard the whole of such statement, and may discard the entire evidence or such witness. The jury are left the exclusive judges of the credibility of witnesses, and must weigh the testimony of each witness in accordance with all the facts proved."

*Hudson & Thomas* and *Reynolds*, for appellant.

I. The first and second instructions given were erroneous. They did not tell the jury what facts and circumstances would authorize them in giving smart money. The fifth instruction was also erroneous. It did not tell the jury what acts the appellant might do to prevent a disturbance or to preserve the peace. The first two instructions asked by defendant should have been given. The petition alleges that the appellant struck the blow, and, unless he did, the respondent could not recover. The third instruction should have been given. Exemplary damages are not allowed unless the wrong was committed deliberately and maliciously. A party may do an act intentionally in the heat of passion and there still be a total absence of deliberation or malice. (Sedgwick on Damages, § 253.) The court should have granted a new trial. The damages were excessive. (Goetz v. Ambs, 22 Mo. 170; Sedgwick, 455–9; 2 Greenl. Ev. § 253, 256–7.)

*H. N. Hart*, for respondent.

RICHARDSON, Judge, delivered the opinion of the court.

The instructions given by the court, on the points they touched, contained general and correct propositions of law, and, as they did not purport to comprehend every view of the case, they were not exceptionable for omitting to cover the whole ground. The defendant could have asked instructions

on any aspect of the case not embraced in those already given, and could have saved his exceptions if they had been refused; but it would be a dangerous practice for this court to establish that every judgment must be reversed, because, though each instruction is correct by itself, yet as a whole they fail to notice some legal proposition that properly arises on the evidence.

The first two instructions asked by the defendant and refused contain the proposition that the plaintiff can not recover for any injury he sustained unless the defendant personally inflicted it. These instructions are not defended on the ground that all persons who are present aiding and encouraging a trespass are not equally guilty with the one who strikes the blow; but it is insisted that the allegation in the petition must correspond with the real fact, and that the plaintiff could not recover short of proof that the defendant struck him, even though it appeared that he was present aiding and abetting another person who did strike. It is generally sufficient in pleading to state facts according to their legal effect; as an averment that A. and B., as partners, made a note, will be sustained by proof that one of them signed it in the name of the firm. So, in an indictment for murder that A. struck the fatal blow, and B. was present aiding and abetting, will be sustained by proof that B. was the actual perpetrator of the deed, and A. was present aiding and abetting; for the injury given by one is, in judgment of law, the injury of the other. And surely greater strictness is not required in civil than in criminal pleading.

The defendant's third and fourth instructions were also properly refused, for they give an undue prominence to the idea of deliberation and malice, which was calculated to mislead the jury. They implied that the defendant must have been prompted by ill-will and hostility towards the plaintiff—a state of feeling which is not necessary to exist to warrant the jury in giving exemplary damages.

If an injury is unavoidable or the conduct of the defendant is without fault, no action will lie, and a trespass, to give a

cause of action, must either be wilfully committed or proceed from a want of due care. The intention is immaterial if the defendant is in any manner to blame, and it only becomes material in considering the question of exemplary damages. If the injury is not intentional, but results simply from a want of proper care, nothing more should be recovered than will compensate for the actual damage; but if the act is wilful or intentional, then " the idea of compensation is abandoned, and that of punishment is introduced." It is said generally that malice must exist to entitle the plaintiff to any thing more than reparation for the injury; but it will be found that the word malice is always used, in such connections, not in its common acceptation of ill-will against a person, but in its legal sense, " wilfulness—a wrongful act, done intentionally, without just cause." (United States v. Taylor, 2 Sum. 586.) The term malice imports, according to its legal signification, nothing more than that the act is wilful or intentional; and when used to qualify the character of a trespass, it is only employed to distinguish it from that class of injuries which one person may inflict upon another without the intention to do harm, but for which he is responsible because the act is not unavoidable.

The defendant called the plaintiff to the stand as a witness and asked these questions : " Did you, since the institution of this suit, at any time assign any interest in this action to any person ; if so, to whom, and what interest ? Have you made any agreement with any person or persons, since the institution of this suit, by which such other person or persons are to receive any share or benefit of any judgment to be rendered ?" The plaintiff's counsel objected to the questions, and the objection being sustained by the court the plaintiff did not answer them. The defendant's answer did not set up any defence on the ground that the plaintiff had no interest in the suit, or that he had assigned the cause of action or any interest in the judgment he expected to obtain, and the testimony sought to be elicited by the question could not have furnished the jury with any proper assistance in estimating the plaintiff's damages.

The judgment on the first verdict in this case was reversed because the damages allowed by the jury were thought to be excessive. (See 22 Mo. 170.) On the last trial the verdict was for a greater amount than on the first, and it is now argued that the objection which was fatal to the first judgment applies with greater force to this one. But, in our opinion, the fact that one judgment has been reversed on account of excessiveness of the damages, is the best reason why the second should not be reversed for a like cause. Whilst the estimate of damages in actions of this kind is the proper office of the jury, the court thought that the evidence did not justify so large a verdict, and that justice would be promoted by giving the defendant a new trial before another jury. A second trial has taken place and a larger verdict has been returned, without any imputation on the conduct of the jury, and something is due to the opinion of two juries. Another interference by the court would not only be an unwise exercise of its power, but would seem to be a usurpation of the province of the jury; and we have no assurance that if another new trial were granted the defendant would be more fortunate than he has been. The general rule on this subject is well stated by Mr. Sedgwick, in his work on Damages, (p. 466,) "That, although the court are entirely satisfied that the damages are excessive and altogether beyond a compensation for the actual loss sustained, they will not, on motion for a new trial, interfere with the finding, unless the verdict is so extravagant as to bear evident marks of prejudice, passion or corruption."

All the judges concurring, the judgment will be affirmed.